IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 14-1360

_____

FIDEL ANGEL VASQUEZ GONZALEZ,

Petitioner – Appellant

v.

ALEJANDRO MAYORKAS,
Director, United States Citizenship
and Immigration Services;

KIMBERLY ZANNOTTI,
Washington Field Office Director, United
States Citizenship and Immigration Services;

ERIC H. HOLDER, JR.,
United States Attorney General;

JEH JOHNSON,
Secretary of the Department of
Homeland Security

Respondents – Appellees,

and

RAND BEERS, Acting Secretary,
Department of Homeland Security,

Respondent

_____

APPEAL FROM FINAL DECISION OF THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF VIRGINIA IN 1:13-cv-1230 (Ellis)

_____

BRIEF OF APPELLANT MR. VASQUEZ GONZALEZ

_____

CHRISTOPHER A. BOWEN
NANCY NOONAN
ARENT FOX LLP
1717 K Street, N.W.
Washington, D.C. 20036
(202) 857-60000 (phone)
(202) 857-6395   (fax)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the Appellant states that it is not a publicly held corporation or other publicly held entity, that it does not have a parent corporation, and that no publicly held corporation owns ten percent or more of its stock.  No publicly held corporation has a direct financial interest in the outcome of the present litigation.

Dated: July 7, 2014

/s/ Christopher A. Bowen
Christopher A. Bowen

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...................................................1

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES ..............................................................2

STATEMENT OF THE CASE...............................................................3

I.      Statement of Facts ...............................................................5

    A.    Mr. Vasquez Gonzalez's Application for NACARA Relief...............5

    B.    Mr. Vasquez Gonzalez's Application for Legal Permanent Residence .........................................................................9

II.     Procedural Posture and Decision Below .....................................11

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT ...................................................................................15

I.      Standard of Review ..............................................................15

II.     The District Court Had Subject Matter Jurisdiction to Order USCIS to Adjudicate Mr. Vasquez Gonzalez's Application, Because USCIS Possesses Exclusive Jurisdiction Over Applications of Arriving Aliens and the INS Designated Mr. Vasquez Gonzalez an "Arriving Alien" in 1991 ......................................................................................15

    A.    The District Court Possessed Subject Matter Jurisdiction to Review USCIS's Administrative Closure of Mr. Vasquez Gonzalez's I-485 Application ............................................16

    B.    The District Court Erred in Affirming USCIS's Decision that USCIS did not Possess Jurisdiction, because Mr. Vasquez Gonzalez Has Been an Arriving Alien Since INS's 1991 Inspection and Parole of Him............................................18

III.    The District Court's Holding that the Revocation of TPS Resulted in a Loss of Arriving Alien Status Conflicts with the Definition of Arriving Alien and Other Decisions............................................24

  The District Court, therefore, made two legal errors in its discussion of TPS......27

CONCLUSION .................................................................................27

REQUEST FOR ORAL ARGUMENT .....................................................27

**TABLE OF CONTENTS**
(continued)

**Page**

CERTIFICATE OF COMPLIANCE.......................................................29

CERTIFICATE OF SERVICE ............................................................30

# TABLE OF AUTHORITIES

**Page(s)**

*Aslam v. Mukasey,*
   531 F. Supp.2d 736 (E.D. Va. 2008) ...................................................17

*Djodeir v. Mayorkas,*
   657 F. Supp.2d 22 (D.D.C. 2009).......................................................17

*Flores v. United States Citizenship & Immigration Servs.,*
   718 F.3d 548 (6th Cir. 2013) ..............................................................26

*Folio v. Clarksburg,*
   134 F.3d 1211 (4th Cir. 1998) ............................................................15

*Heron v. United States,*
   512 F.2d 439 (4th Cir. 1975) .........................................................23, 24

*Iddir v. I.N.S.,*
   301 F.3d 492 (7th Cir. 2002) ..............................................................16

*In re Cassius Usunobun Ekhator,*
   2004 WL 880328 (B.I.A. Mar. 4, 2004)..............................................21

*Lee v. U.S. Citizenship & Immigration Servs.,*
   592 F.3d 612 (4th Cir. 2010) ..............................................................18

*Matter of Yauri,*
   25 I & N. Dec. 103 (B.I.A. 2009).......................................................25

*McCarthy v. United States,*
   394 U.S. 459 (1969)............................................................................23

*Mohammed v. Holder,*
   695 F. Supp.2d 284 (E.D. Va. 2011) ..................................................17

*Pinho v. Gonzalez,*
   432 F.3d 193 (3d Cir. 2005) ...............................................................17

*Ramirez v. Dougherty,*
   --- F. Supp.2d ---, 2014 WL 2439819 (W.D. Wash. May 30, 2014) .................27

*Ravulpalli v. Napolitano,*
   773 F. Supp.2d 41 (D.D.C. 2011)........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

*Reyes-Vasquez v. Ashcroft,*
   395 F.3d 903 (8th Cir.2005) ....................................................17

*Safardi v. Howard,*
   466 F. Supp.2d 696 (E.D. Va. 2006) ......................................17

*Santana-Albarran v. Ashcroft,*
   393 F.3d 699 (6th Cir.2005) ....................................................17

*Sepulveda v. Gonzales,*
   407 F.3d 59 (2d Cir. 2005) ......................................................17

*Succar v. Ashcroft,*
   394 F.3d 8 (1st Cir. 2005)........................................................16

*Tillman v. Resolution Trust Corp.,*
   37 F.3d 1032 (4th Cir. 1994) ..................................................15

*Vasquez Gonzalez v. Mayorkas et al.,*
   E.D. Va. No. 1:13-cv-1230 ........................................................1

**STATUTES**

5 U.S.C. § 702 ..............................................................................1, 16

8 U.S.C. § 1252................................................................................16, 17

8 U.S.C. § 1255....................................................................................17

28 U.S.C. § 1291....................................................................................2

28 U.S.C. § 1331............................................................................1, 16

28 U.S.C. § 1361....................................................................................1

**OTHER AUTHORITIES**

8 C.F.R. § 244.5..................................................................................26

8 C.F.R. § 244.13................................................................................26

8 C.F.R. § 245.2..........................................................1, 4, 5, 11, 13, 15, 19

# TABLE OF AUTHORITIES

**Page(s)**

8 C.F.R. § 245.8 .................................................................................11, 13

8 C.F.R. § 1001.1(q) .............................................................................*passim*

8 C.F.R. § 1245.2 ................................................................................*passim*

Fed. R. App. P. 4 .....................................................................................1

Fed. R. Civ. P. 12(b)(1) .........................................................................1

Fed. R. Civ. P. 12(b)(6) .........................................................................1

Fed. R. Crim. Pro. 11(b)(3).....................................................................23

## JURISDICTIONAL STATEMENT

This case involves an appeal from the February 12, 2014 final decision and judgment of the United States District Court for the Eastern District of Virginia in *Vasquez Gonzalez v. Mayorkas et al.,* E.D. Va. No. 1:13-cv-1230, which dismissed Mr. Vasquez Gonzalez's petition for writ of mandamus.  Joint Appendix ("JA") at 5, 19.  Mr. Vasquez Gonzalez's Petition for Writ of Mandamus, filed October 3, 2013, sought to compel United States Citizenship and Immigration Services ("USCIS") to adjudicate Mr. Vasquez Gonzalez's I-485 Application to Adjust Status to Lawful Permanent Resident.  JA at 102-120 .

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 to adjudicate Mr. Vasquez Gonzalez's petition for writ of mandamus, which was brought pursuant to the Administrative Procedures Act, 5 U.S.C. § 702 *et seq.* and the Mandamus Act, 28 U.S.C. § 1361.  Mr. Vasquez Gonzalez argued that he had a right to a decision from USCIS pursuant to 8 C.F.R. § 245.2 and 8 C.F.R. § 1245.2.

On November 14, 2013, the United States moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On February 12, 2014, the district court granted the Government's motion to dismiss, holding that USCIS had correctly refused to adjudicate Mr. Vasquez Gonzalez's I-485 application.  JA at 19.  The Court issued a final order dismissing the case the same day.  JA at 5.  Pursuant to Rule 4 of the Federal Rules of

Appellate Procedure, Mr. Vasquez Gonzalez filed a timely notice of appeal with the district court on April 14, 2014.

This Court possesses jurisdiction pursuant to 28 U.S.C. § 1291, which provides this Court with jurisdiction to adjudicate Mr. Vasquez Gonzalez's timely appeal of the district court's February 12, 2014 final order.  JA at 5.

## STATEMENT OF THE ISSUES

1.      Under Federal Regulations, USCIS possesses exclusive jurisdiction to adjudicate the adjustment of status applications of arriving aliens.[1]  Here, USCIS's predecessor designated Mr. Vasquez Gonzalez as an arriving alien in 1991.  In 2013, however, USCIS administratively closed, and thus effectively refused to adjudicate, Mr. Vasquez Gonzalez's adjustment application based on lack of jurisdiction and the district court affirmed.  Did the District Court err in affirming USCIS's refusal to adjudicate Mr. Vasquez Gonzalez's adjustment application?

2.      Pursuant to Federal Regulations, an immigrant classified as an "arriving alien" retains that designation even if the parole is terminated or revoked.  Mr. Vasquez Gonzalez was paroled into the United States as an arriving alien in

---

[1]      8 C.F.R. § 1001.1(q) provides, "the term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not a designated port-of-entry.  An arriving alien remains an arriving alien even if paroled pursuant to section 212(d) of the [Immigration and Nationality] Act, and even after any such parole is terminated or revoked."

1991.  The District Court, however, held that when Mr. Vasquez Gonzalez's lost

his Temporary Protected Status ("TPS") in 2010 the loss instantly operated to

revert Mr. Vasquez Gonzalez's status to that of an alien who entered without

inspection.  Did the district court err in holding Mr. Vasquez Gonzalez was no

longer an arriving alien?

## STATEMENT OF THE CASE

Mr. Vasquez Gonzalez has been in the United States since 1984.  He would

like to stay.  He asks this Court to order USCIS to decide whether it will grant or

deny his application to adjust his status to lawful permanent resident.  USCIS has

so far refused to adjudicate the application.  JA at 101.

On January 12, 2012, USCIS approved Mr. Vasquez Gonzalez's adult, U.S.

citizen son's Petition for Alien Relative ("I-130") establishing the father-child

relationship between Mr. Vasquez Gonzalez and his son, and certifying that Mr.

Vasquez Gonzalez is an immediate relative of a United States citizen.  JA at 85-87.

On April 25, 2012, Mr. Vasquez Gonzalez filed his Application for Adjustment of

Status to Lawful Permanent Resident ("I-485") with USCIS based upon the

approved I-130 classifying him as an immediate relative.  JA at 88-94.

USCIS failed to adjudicate or take any action whatsoever with Mr. Vasquez

Gonzalez's I-485 application for 452 days.  *See* JA at 88 (noting Applicant

Interview on August 27, 2013).  After waiting more than a year and a third to

3

respond to Mr. Vasquez Gonzalez, USCIS administratively closed the case without either granting or denying his I-485, and informed Mr. Vasquez Gonzalez that USCIS could not adjudicate his claim, because he was in removal proceedings, and, pursuant to 8 C.F.R. § 245.2(a), only an immigration judge ("IJ") can adjudicate the adjustment status application of an alien in removal proceedings. JA at 101.

Mr. Vasquez Gonzalez filed a petition for a writ of mandamus to compel USCIS to adjudicate his adjustment of status application. JA at 102-120. Mr. Vasquez Gonzalez argued that:  (a) he met the definition of an "arriving alien" because of USCIS's predecessor, the Immigration and Naturalization Service ("INS"), had paroled him into the United States in 1991; and (b) that 8 C.F.R. §§ 245.2(a)(1) and 1245.2(a)(1) grant USCIS exclusive jurisdiction over the adjustment of status applications of arriving aliens regardless of whether the applicant has an outstanding order of removal.  JA at 104.

The Government respondents moved to dismiss, arguing that, although USCIS has jurisdiction to adjudicate the adjustment of status applications of arriving aliens who have been paroled into the United States, USCIS could not classify Mr. Vasquez Gonzalez as an arriving alien given the charge of inadmissibility that was sustained by the IJ in 2008.  JA at 6-7.  Specifically, the Government argued that, although Mr. Vasquez Gonzalez was paroled into the

4

United States as an arriving alien in 1991, USCIS and the court were bound by the December 18, 2008 IJ's decision denying Mr. Vasquez Gonzalez's application for Special Rule Cancellation of Removal under Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") and ordering him removed based on the charge contained in the Notice to Appear. JA at 6-7. The district court agreed and granted the Government's motion to dismiss, holding that USCIS did not possess jurisdiction, so the court could not grant the relief sought. JA at 5, 6-7.

The issue on appeal is now whether the District Court and the Government are correct in concluding that USCIS does not have jurisdiction to adjudicate Mr. Vasquez Gonzalez's adjustment application (making the case moot) despite the fact that Mr. Vasquez Gonzalez meets the definition of "arriving alien."

## I.    Statement of Facts

### A.    Mr. Vasquez Gonzalez's Application for  NACARA Relief

Mr. Vasquez Gonzalez entered the United States without inspection in August 1984. JA at 20. On June 6 1988, he applied for asylum based on ongoing violence in his native El Salvador. JA at 8. On December 22, 1988, while his asylum application was pending, the INS served him with an Order to Show Cause, charging him with being present in the country without inspection. *Id.* After the IJ denied Mr. Vasquez Gonzalez's asylum claim, Mr. Vasquez Gonzalez filed a

5

timely appeal and he applied for and obtained Temporary Protected Status

("TPS"), which ensured that he would not be deported while the appeal was

pending.  JA at 8, 23.  On January 14, 1991, the Board of Immigration Appeals

("BIA") administratively closed Mr. Vasquez Gonzalez's proceedings to allow him

to pursue TPS.  JA at 24.

While in TPS, petitioner was granted advanced parole to return to El

Salvador to visit his ailing father.  JA at 25; JA. at 106-07, ¶ 17.  Upon his return to

the United States in 1991, he was paroled into the United States as an arriving

alien.  JA at 25, 106-07 at ¶ 17.  The Code of Federal Regulations provide that Mr.

Vasquez Gonzalez remains an arriving alien "even after such parole is terminated

or revoked."  8 C.F.R. § 1001.1(q).   Mr. Vasquez Gonzalez has not left the United

States since he was paroled in 1991.  On October 4, 1995, Mr. Vasquez Gonzalez

filed a second application for asylum.  JA at 8.

In April 2000, Mr. Vasquez Gonzalez applied for NACARA relief.  JA at 8.

On January 17, 2001, INS Officer Lin conducted Mr. Vasquez Gonzalez's

NACARA interview and questioned him regarding his activities in El Salvador as

an officer in El Salvador's Treasury Police prior to 1984.  JA at 8, 39-40.  On

January 19, 2001, Officer Lins recommended denying NACARA relief as a matter

of discretion, after balancing both positive and negative discretionary factors.  JA

at 42 ("As a matter of discretion . . . .").

On December 4, 2002, the INS issued Mr. Vasquez Gonzalez a Notice to Appear in immigration court.  JA at 9, 44.  The Notice alleged that Mr. Vasquez Gonzalez was inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") because he had entered the United States on August 14, 1984 but was "not then admitted or paroled after inspection by an Immigration Officer."  *Id.*  At a February 19, 2003 hearing before an IJ, Mr. Vasquez Gonzalez, represented by counsel, admitted the factual allegations contained in the Notice to Appear, including having entered without inspection in 1984.  JA at 48-49.  Mr. Vasquez Gonzalez thereafter renewed his application for NACARA relief.

At a February 11, 2005 hearing, Mr. Vasquez Gonzalez testified about his work in El Salvador as an officer in the Treasury Police, explaining that Officer Lins had misinterpreted his remarks about his work and that he had only arrested people who engaged in vandalism during anti-government protests.  JA at 60.  Officer Lins also testified before the immigration court about her recollection of his statements.  JA at 58.[2]

On December 18, 2008, the IJ denied Mr. Vasquez Gonzalez's NACARA application, finding that he did not merit a favorable finding of discretion.  JA at 69-71.  In his decision, the IJ based his discretionary denial on inconsistencies

---

[2]    For procedural reasons, on July 19, 2005, upon joint motion by Mr. Vasquez Gonzalez and the Government, the BIA agreed to reopen the proceedings that had previously been closed in January 1991 so that an IJ could consider Mr. Vasquez Gonzalez's request for NACARA relief.  JA at 56.

between Mr. Vasquez Gonzalez's 2001 interview and his 2005 in-court statements.
JA at 70-71.  The decision noted both that Mr. Vasquez Gonzalez was charged
with being inadmissible because he had entered without inspection (the original
charge in the INS 1988 Order to Show Cause), and that Mr. Vasquez Gonzalez was
currently present in the United States after being inspected and paroled.  JA at 57,
59.  Mr. Vasquez Gonzalez "left in 1991 with INS permission and returned to El
Salvador for about one month.  Upon return to the United States, he was inspected
by an immigration officer." (i.e., was an arriving alien).  JA at 59.

The IJ's decision never contradicted or questioned Mr. Vasquez Gonzalez's
testimony that he had been paroled into the United States after inspection.  See
JA at 56-71.  Nor did that decision discuss any inconsistency between Mr. Vasquez
Gonzalez having been charged as having entered without inspection or parole in
1984 and his testimony that he had been an arriving alien on parole since 1991.  *Id.*
On October 15, 2010, BIA affirmed the decision, but discussed neither Mr.
Vasquez Gonzalez's 1991 parole nor his 1984 entry without inspection, except to
note that it was the charge in the Notice to Appear.  JA at 72-74.

On December 15, 2010, USCIS withdrew Mr. Vasquez Gonzalez's TPS and
noted that the decision would be final if Mr. Vasquez Gonzalez failed to file a
timely appeal.  JA at 75-78.  On January 13, 2011, Mr. Vasquez Gonzalez timely
filed a motion to reconsider the proposed withdrawal of TPS.  JA at 78.  On

8

September 6, 2011, USCIS denied Mr. Vasquez Gonzalez's motion for reconsideration, and again noted that the decision would become final if Mr. Vasquez Gonzalez did not appeal.  JA at 81.  On September 12, 2011, Mr. Vasquez Gonzalez timely filed a notice of appeal of USCIS's decision.  JA at 84.  On June 21, 2013, the Administrative Appeals Office ("AAO") denied Mr. Vasquez Gonzalez's appeal of the withdrawal of TPS.  JA at 96, 100.

### B.    Mr. Vasquez Gonzalez's Application for Legal Permanent Residence

During the quarter century while the INS, the Department of Homeland Security ("DHS" of which USCIS is a part), and the Executive Office for Immigration Review ("EOIR") considered Mr. Vasquez Gonzalez's requests for asylum and NACARA relief, Mr. Vasquez Gonzalez built a successful life in this country and legally worked.  Mr. Vasquez Gonzalez raised five children, all of whom are either citizens or lawful permanent residents of the United States.  JA at 106, ¶ 14.  In addition, Mr. Vasquez Gonzalez's youngest son, Mr. Fredy Arnoldo Vasquez Flores, owns a successful general contracting company named Ebenezer Electric LLC.  JA at 106, ¶ 15.

On July 11, 2011, Mr. Fredy Vasquez Flores, Mr. Vasquez Gonzalez's son, filed an I-130 Petition for Alien Relative on behalf of Mr. Vasquez Gonzalez, which was approved on January 17, 2012.   JA at 85-87.

9

On April 25, 2012, Mr. Vasquez Gonzalez filed his I-485 application for Adjustment of Status to Lawful Permanent Resident based upon the approved I-130, along with a lengthy list of required documents.  JA at 109, ¶ 26; 88-94. USCIS did not act on his I-485 application for 432 days, and only issued a Request for Applicant to Appear for Initial Interview after Mr. Vasquez Gonzalez's attorney contacted them regarding the cause of the delay.  JA at 88, 110 at ¶ 27.

At the interview, USCIS simply collected all of Mr. Vasquez Gonzalez's official identification documents and went through the application with him.  JA at 110, ¶ 30.  The USCIS officer then asked Mr. Vasquez Gonzalez and his family to sit in the waiting room as the USCIS officer checked with her supervisor.  *Id.* After three hours of waiting, Mr. Vasquez Gonzalez and his family were greeted not by the USCIS officer, but by an Immigration and Customs Enforcement ("ICE") agent, who told Mr. Vasquez Gonzalez that he would not be getting any of his documents back; that his application was administratively closed, meaning that it was "dead in the water"; that USCIS would neither approve nor deny the application; and that he should report to his September 9, 2013 hearing before an IJ with an itinerary for travel back to El Salvador.  JA at 103, ¶ 2; JA at 110, ¶ 31. On August 30, 2013, Mr. Vasquez Gonzalez's attorney received the letter from USCIS memorializing this discussion.  JA at 101 (letter dated August 27, 2013), 111 at  ¶ 35.  The letter purported to rely upon language from 8 C.F.R. §

10

245.2(a)(1), but this language did not and does not, actually exist in the regulations.  JA at 17, 111 at ¶¶ 36-37; JA at 101.

## II.   <u>Procedural Posture and Decision Below</u>

On October 3, 2013, Mr. Vasquez Gonzalez filed a petition for writ of mandamus in the United States District Court for the Eastern District of Virginia. JA at 102-120.  Mr. Vasquez Gonzalez sought an order requiring USCIS to adjudicate his application, because, based on his 1991 parole into the United States, he should be classified as an "arriving alien" and, therefore, only USCIS could adjudicate his petition pursuant to 8 C.F.R. § 245.2(a)(1) and 8 C.F.R. § 1245.2(a)(1).  JA at 6-7.  Mr. Vasquez Gonzalez argued that he had therefore correctly filed his adjustment application with USCIS in April 2012.  JA at 102-104.  On October 24, 2013, ICE agreed to stay Mr. Vasquez Gonzalez's removal pending the completion of the civil lawsuit.  JA at 121.

On November 14, 2013, the Government moved to dismiss, arguing that, regardless of whether Mr. Vasquez Gonzalez's 1991 parole made him an "arriving alien," USCIS was bound by the 2008 IJ decision and the 2010 BIA decision ("2008 and 2010 decisions").  Specifically, the Government argued that the underlying inadmissibility charge contained in the 2002 Notice to Appear under section 212(a)(6)(A)(i) of the INA (present in the United States without being admitted or paroled), which served as the basis for the removal order, could not be

11

circumvented.  The Government further argued that USCIS could not find that Mr. Vasquez Gonzalez was present as an arriving alien, but, rather, was required to find that he was present after having entered without inspection.  JA at 6.[3]  Mr. Vasquez Gonzalez argued that the charge in the 2002 Notice to Appear did not relate to his status in the country in 2012 when he filed the adjustment application, but, rather, correlated to the grounds of removability from 1988 when Mr. Vasquez Gonzalez was originally charged as deportable.

On February 12, 2014, the district court granted the Government's motion to dismiss.  JA at 5.  The district court held that the 2008 and 2010 decisions bound USCIS to classify Mr. Vasquez Gonzalez as an alien who entered without inspection, rather than an arriving alien.  JA at 15-17.  Because USCIS could not consider the applications of aliens in removal proceedings other than arriving aliens, the District Court reasoned that it could not order USCIS to issue a decision for Mr. Vasquez Gonzalez and, therefore, the case was moot and properly subject to dismissal for lack of subject matter jurisdiction.  JA at 7.

In holding that USCIS correctly decided that Mr. Vasquez Gonzalez was not an arriving alien, the district court focused on the 2008 and 2010 decisions and the later revocation of Mr. Vasquez Gonzalez's TPS.  Specifically, the district court

---

[3]    The Government also argued that the court did not possess jurisdiction to review USCIS's decision that USCIS did not possess jurisdiction.  The court did not address that argument, except to say that the court could not force the Attorney General to adjudicate the application.  JA at 7.

held that Mr. Vasquez Gonzalez could not be classified as both an arriving alien and an alien who had previously entered without inspection. JA at 18. The court then interpreted the decisions as holding that Mr. Vasquez Gonzalez was only an alien who had entered without inspection and was not an arriving alien, because, in the court's opinion, the two categories were mutually exclusive. *Id.*

The court further reasoned that Mr. Vasquez Gonzalez's 1991 parole into the United States was premised on the grant of Temporary Protected Status. JA at 18. Once that status was revoked, the court concluded that Mr. Vasquez Gonzalez was no longer an "arriving alien," but reverted to being an alien present without inspection. "[W]hen petitioner's TPS was revoked in 2010, the temporary stay of his removal was lifted, and petitioner's status reverted to that of an alien who entered without inspection and was therefore deemed inadmissible." JA at 18.

On April 14, 2014, Mr. Vasquez Gonzalez filed a timely notice of appeal.

## SUMMARY OF THE ARGUMENT

The District Court made two legal errors. First, the decision incorrectly held that an alien cannot be an arriving alien whose removal the Government sought based on a prior entry without inspection. The applicable regulations, 8 C.F.R. §§ 245.2 and 1245.2, facially contemplate that there will be arriving aliens who are in removal proceedings, and make no exclusion for an arriving alien who the Government seeks to remove because of a prior entry without inspection. A

13

contrary finding would require this Court to find that in 2008, the IJ accepted Mr. Vasquez Gonzalez's concession to being removable because of an entry without inspection, despite then testifying to facts establishing that he was an arriving alien. Furthermore, the Third Circuit, the only circuit court of appeals to have considered the issue, has held that immigrants who initially enter without inspection who are subsequently paroled back into the United States as "arriving aliens" must file their adjustment applications with USCIS. The District Court's finding, therefore, is incorrect as a matter of law.

Second, the District Court's holding that Mr. Vasquez Gonzalez lost his status as an arriving alien automatically upon the revocation of his TPS is contradicted by the very definition of an arriving alien in 8 C.F.R. § 1001.1(q). That regulation states that once an alien is designated an "arriving alien," he or she retains that designation "even after any such parole is terminated or revoked." *Id*. The revocation of TPS, therefore, has no effect on Mr. Vasquez Gonzalez's status as an arriving alien, which he remains today. Even ignoring the conflict with the regulatory definition, however, the District Court's decision still ignores that Mr. Vasquez Gonzalez was appealing the revocation of this TPS status at the time he filed his adjustment application with USCIS in April 2012. Mr. Vasquez Gonzalez's Temporary Protected Status was not finally revoked until 2013, more

than a year after he filed his adjustment application with USCIS.  The District

Court's decision, therefore, must be reversed.

## ARGUMENT

### I.    Standard of Review

The dismissal of a case for lack of subject matter jurisdiction is a legal

determination subject to *de novo* review.  *Folio v. Clarksburg*, 134 F.3d 1211,

1214 (4th Cir. 1998); *Tillman v. Resolution Trust Corp*., 37 F.3d 1032, 1034 (4th

Cir. 1994) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*,

945 F.2d 765, 768-69 (4th Cir. 1991)).

### II.    The District Court Had Subject Matter Jurisdiction to Order USCIS to Adjudicate Mr. Vasquez Gonzalez's Application, Because USCIS Possesses Exclusive Jurisdiction Over Applications of Arriving Aliens and the INS Designated Mr. Vasquez Gonzalez an "Arriving Alien" in 1991

Pursuant to 8 C.F.R. §§ 245.2 and 1245.2, USCIS had exclusive jurisdiction

over Mr. Vasquez Gonzalez's application, because Mr. Vasquez Gonzalez was an

arriving alien admitted into the United States pursuant to an advance parole.  The

fact that Mr. Vasquez Gonzalez was charged with being removable for a prior

entry without inspection cannot and does not change his status.  The District Court

erred, both in holding that an arriving alien could not be in removal proceedings

for a prior entry without inspection (JA at 18) and in its interpretation of the 2008

and 2010 decisions as having designated Mr. Vasquez Gonzalez as not an arriving

alien.  This Court, therefore, should reverse the decision.

### A. The District Court Possessed Subject Matter Jurisdiction to Review USCIS's Administrative Closure of Mr. Vasquez Gonzalez's I-485 Application

As noted above, the Government initially argued that the District Court

could not review even USCIS's decision to administratively close the application,

because such review was precluded under 8 U.S.C. § 1255(a) and various

provisions of 8 U.S.C. § 1252.  JA at 6, n.2.  The District Court, however, correctly

opted to review the merits of USCIS's decision to administratively close Mr.

Vasquez Gonzalez's application.

Pursuant to 28 U.S.C. § 1331, the District Court had subject matter

jurisdiction under the Administrative Procedures Act, 5 U.S.C. § 702 *et seq.* to

adjudicate USCIS's administrative closure of the application, because USCIS's

determination was not based on discretion, but, instead, on a decision that that it

had no discretion regarding whether it could review Mr. Vasquez Gonzalez's

adjustment application.  See *Succar v. Ashcroft*, 394 F.3d 8, 19-20 (1st Cir. 2005)

(review of BIA's decision that it could not review adjustment application of

arriving alien); *Iddir v. I.N.S.*, 301 F.3d 492, 497 (7th Cir. 2002) (holding that

district court possessed jurisdiction to review petition for writ of mandamus

regarding their I-485 applications, but that dispute was moot because INS did not

16

possess the power to issue lottery-based visas in that year); *Aslam v. Mukasey*, 531 F. Supp.2d 736, 739-40 (E.D. Va. 2008) (holding that § 1252 did not preclude review of USCIS's delay in adjudicating application); *Ravulpalli v. Napolitano*, 773 F. Supp.2d 41, 50-51 (D.D.C. 2011); *see also Pinho v. Gonzalez*, 432 F.3d 193, 204 (3d Cir. 2005); *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (Sotormayor, J.); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 906 (8th Cir.2005) ("Although the decision to grant cancellation of removal is a discretionary act by the Attorney General that we may not review, . . . we may consider the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility to be considered for the relief"); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir.2005) ("The denial of relief based on the ground that the alien has failed to demonstrate a continuous physical presence . . . is a non-discretionary factual determination and properly subject to appellate review."). *But see Djodeir v. Mayorkas*, 657 F. Supp.2d 22 (D.D.C. 2009) (holding that 8 U.S.C. § 1252 precludes all judicial review of denials of relief under 8 U.S.C. § 1255); *Safardi v. Howard*, 466 F. Supp.2d 696 (E.D. Va. 2006) (holding that Section 1252(a)(2)(B) precluded review of pace of USCIS's review of I-485 application); *but see also Mohammed v. Holder*, 695 F. Supp.2d 284, 291

(E.D. Va. 2011) (holding in dicta that Section 1252(a)(2)(B)(i) precluded review of USCIS administrative closure of adjustment application).[4]

This Court, therefore, should hold that the District Court properly reviewed the merits of USCIS's decision to administratively close Mr. Vasquez Gonzalez's I-485 application on jurisdictional grounds.

**B.    The District Court Erred in Affirming USCIS's Decision that USCIS did not Possess Jurisdiction, because Mr. Vasquez Gonzalez Has Been an Arriving Alien Since INS's 1991 Inspection and Parole of Him**

The District Court erred in holding that it had no power to order USCIS to adjudicate Mr. Vasquez Gonzalez's I-485 application to adjust status, because pursuant to the regulations, USCIS, not an IJ, is the only forum available for as an arriving alien such as Mr. Vasquez Gonzalez.

Pursuant to 8 C.F.R. § 1001.1(q), an arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry, . . . . **An arriving alien remains an arriving alien** even if paroled pursuant to section 212(d)(5) of the Act, and **even after any such parole is terminated or revoked**." 8 C.F.R. § 1001.1(q) (emphasis added). On August 11, 1991, Mr.

---

[4]     *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 618-20 (4th Cir. 2010) does not govern this case, because Lee involved the review of a discretionary decision on the part of USCIS, i.e., whether the facts regarding the petitioner's work and immigration history underlying the adjustment application supported his application. USCIS held that they did not, and the Fourth Circuit affirmed the finding of a lack of subject matter jurisdiction to review discretionary decisions. *Id*.

Vasquez Gonzalez was inspected at a port of entry and paroled back into the United States pursuant to a grant of advance parole. The Form I-512, "Authorization for Parole of an Alien into the United States," which was issued to Mr. Vasquez Gonzalez and approved his travel abroad, explicitly provided that upon his return to the United States, Mr. Vasquez Gonzalez would not be "considered to have made an entry" and "may be subject to exclusion proceedings." JA at 25. The Form I-512 facially shows an arrival stamp evidencing that Mr. Vasquez Gonzalez was inspected and paroled into the United States at the "WAS" port of entry. *Id*.

Pursuant to 8 C.F.R. § 245.2(a)(1) USCIS has "jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the IJ has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)." Section 1245.2(a)(1) provides:

> (i) In General. In the case of any alien who has been placed in deportation proceedings or in removal proceedings (**other than as an arriving alien**), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.

> (ii) **Arriving Aliens**. In the case of an arriving alien who is placed in removal proceedings, **the immigration judge does not have jurisdiction** to adjudicate any application for adjustment of status filed by the arriving alien . . . .

8 C.F.R. § 1245.2(a)(1) (emphasis added). Thus, by the terms of the regulations: Mr. Vasquez Gonzalez was an arriving alien, Mr. Vasquez Gonzalez retained that

19

status even if his parole was revoked, and arriving aliens, even those in removal proceedings, must file their adjustment applications with USCIS.

The District Court held, however, that Mr. Vasquez Gonzalez was not an arriving alien, because the 2008 and 2010 decisions held that he was inadmissible and thus removable for having entered in 1984 without inspection. JA at 18 ("[t]he category of aliens who entered without inspection and the category of arriving aliens are mutually exclusive"). This is legally incorrect. It conflicts with prior precedents, earlier positions taken by DHS, and the decisions by other immigration judges.

The District Court's statement conflicts with the Third Circuit's precedent regarding arriving aliens charged with removability for an entry without inspection. In *Zheng v. Gonzalez*, the Third Circuit specifically dealt with the issue of an alien who had previously entered without inspection but then had departed pursuant to a grant of advance parole and then returned as an arriving alien. 422 F.3d 98, 123-24 (3d Cir. 2005). The Third Circuit held that, as an arriving alien in removal proceedings because of a prior entry without inspection, Mr. Zheng should file his adjustment application with USCIS, rather than the IJ overseeing the removal proceedings. *Id.* at 123.

> The simplest reading of § 1245.2(a)(1) in light of our eligibility holding is that aliens in Zheng's position fall into the catch-all category of aliens who may apply to the USCIS district director responsible for their place of residence. This reading is bolstered by

>the fact that, prior to the enactment of the eligibility regulation that we
>have invalidated today, an arriving alien in removal proceedings was
>required to file his or her adjustment applications with the INS district
>director rather than the IJ hearing the removal proceedings

*Id.* (citations omitted). Indeed, Mr. Zheng, like Mr. Vasquez Gonzalez, applied for a grant of advance parole while making a claim to adjust status based on country-specific conditions, a claim that was later denied. *Id.* at 104. Nonetheless, the Third Circuit instructed that USCIS was the procedurally and legally appropriate agency in which to file the adjustment application. *Id*. at 123.

Additionally, *In re Cassius Usunobun Ekhator*, 2004 WL 880328 (B.I.A. Mar. 4, 2004) also dealt with an arriving alien in removal proceedings due to a prior entry without inspection. Mr. Ekhator also, like Messrs. Zheng and Vasquez Gonzalez, entered without inspection, was granted advance parole, and returned to be classified as an "arriving alien" only to face charges that he should be removed for the prior entry without inspection. 2004 WL 880328, at *2. When Mr. Ekhator filed his adjustment application with the IJ, however, DHS objected, arguing that the only relief could have come from the district director. *Id*. at *3. Thus, DHS is now taking a position inconsistent with that it advocated in the past.

The District Court's decision, therefore, erred in holding that an alien could not be classified as an arriving alien and be charged with being removable for having entered without inspection. In this case, that is exactly what the documents demonstrate. The 2002 Notice to Appear specifically charged Mr. Vasquez

21

Gonzalez as inadmissible because "[y]ou entered the United States at or near Brownsville, TX on or about August 14, 1984 [and] [y]ou were not then admitted or paroled after inspection by an immigration officer." JA at 44. When Mr. Vasquez Gonzalez entered in 1984, he had not been "admitted or paroled," and therefore the charge of inadmissibility was not inconsistent with the fact that in 2002 (and since 1991) Mr. Vasquez Gonzalez was an arriving alien. Additionally, Mr. Vasquez Gonzalez's counsel's statement that he conceded the charge of inadmissibility meant only that he conceded he had entered without inspection or parole in 1984. JA at 44, 48.

The District Court's legal error led it to misinterpret the 2008 and 2010 decisions. Indeed, the 2008 and 2010 decisions only make sense if Mr. Vasquez Gonzalez was an arriving alien charged with inadmissibility because of the prior entry without inspection. In the 2008 IJ decision, the judge noted that Mr. Vasquez Gonzalez admits having entered without inspection and admission (JA at 57), but then also notes that Mr. Vasquez Gonzalez testified that in 1991 "[u]pon return to the United States, he was inspected by an immigration officer." JA at 59. If the district court were correct that being an "arriving alien" is always incompatible with the charge of being an alien who entered without inspection, then the IJ in 2008 would have accepted a legal admission despite sworn testimony contradicting the facts on which the factual allegations in the Notice to Appear were based. *Cf.*

JA at 57 (noting that Mr. Vasquez Gonzalez entered without inspection) with JA at 59 (noting Mr. Vasquez Gonzalez's testimony that he was inspected upon his arrival in 1991); compare to Fed. R. Crim. Pro. 11(b)(3) ("[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea"); *McCarthy v. United States*, 394 U.S. 459, 467 (1969) ("[r]equiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect the defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge without realizing that his conduct does not actually fall within the charge.'") (quoting Fed. R. Crim. Pro. 11, Notes of Advisory Committee); *Heron v. United States*, 512 F.2d 439, 441 (4th Cir. 1975) (vacating guilty plea where record failed to establish that defendant admitted factual predicate for offense).[5]  The only way to avoid this result is to hold that, like in *Zheng*, Mr. Vasquez Gonzalez was an arriving alien who was charged with inadmissibility and thus subject to removal because of a prior entry without inspection.

The district court legally erred in holding that "[t]he category of aliens who entered without inspection and the category of arriving aliens are mutually exclusive." JA at 18.  This legal error led the district court and USCIS to read

---

[5]    The 2010 BIA decision simply noted, without analysis, the charge of being present without being admitted or paroled, and, therefore, is not in conflict with Mr. Vasquez Gonzalez being an arriving alien who is also charged with being removable for the 1984 entry without inspection.  JA at 72-74.

holdings into the 2008 and 2010 decisions that were not there and to an interpretation that would lead to the conclusion that the IJ improperly accepted Mr. Vasquez Gonzalez's admissions of the factual allegations and concession of removability.  This Court, therefore, must reverse the district court.

**III.    The District Court's Holding that the Revocation of TPS Resulted in a Loss of Arriving Alien Status Conflicts with the Definition of Arriving Alien and Other Decisions**

The district court held that Mr. Vasquez Gonzalez was not an arriving alien for purposes of filing his 2012 adjustment application, because USCIS revoked Mr. Vasquez Gonzalez's TPS in December 2010.   Without citing any statutes, regulations, or decisions, the district court held "when petitioner's TPS was revoked in 2010, the fact that he entered illegally in 1984 controlled his status." JA at 18.  The District Court also stated Mr. Vasquez Gonzalez's status "reverted [to] that of an alien who entered without inspection."  *Id*.  These statements are legally incorrect.  First, they conflict with the definition of "arriving alien" in the regulations.  Second, the District Court's decision ignores that Mr. Vasquez Gonzalez was still appealing the revocation more than a year after he filed his I-485 application.  This Court, therefore, should reverse the District Court's decision.

To begin, whether Mr. Vasquez Gonzalez possessed TPS at the time of his application is irrelevant to whether Mr. Vasquez Gonzalez was properly classified

as an arriving alien.  Pursuant to 8 C.F.R. § 1001.1(q), once an alien is designated as an "arriving alien," that alien retains that status "even after any such parole is terminated or revoked."  The District Court's holding that the withdrawal of TPS eliminated Mr. Vasquez Gonzalez's status as an "arriving alien" is inconsistent with section 1001.1(q)'s mandate that an arriving alien retains that status even if the alien is placed into custody.  Notably, the District Court's holding that the withdrawal of TPS would alter the status of an arriving alien to some other status was not supported by any legal citations whatsoever, and such a reading is plainly inconsistent with 8 C.F.R. § 1001.1(q).  *See* JA at 17-19.  Indeed, the District Court made several conclusions and assumptions of similar note regarding immigration law in its decision without citing to case law, regulations, or the INA.  *See* JA at 16-17.  Moreover, the Board of Immigration Appeals has held that even a final order of removal does not preclude USCIS from granting adjustment of status to an arriving alien who is otherwise eligible.  *Matter of Yauri*, 25 I & N. Dec. 103, 107 (B.I.A. 2009).  Under section 1001.1(q), therefore, an alien's status as an arriving alien is unaffected by decisions in any other immigration proceedings.

Second, the District Court's statement that Mr. Vasquez Gonzalez lost his TPS in 2010 (prior to the filing of the I-485) simply conflicts with the governing regulations and undisputed facts.  Thus, even assuming that whether TPS had been withdrawn by the date of the 2012 adjustment application is legally relevant, the

District Court's decision is wrong.  Pursuant to 8 C.F.R. § 244.5 an alien with TPS enjoys the protections of TPS "until [the benefits are] terminated [pursuant to] 8 C.F.R. § 244.13."  Under § 244.13, "Temporary treatment benefits terminate upon **a final determination** with respect to the alien's eligibility for Temporary Protected Status."  8 C.F.R. § 244.13(a) (emphasis added).

The December 2010 TPS decision issued by USCIS, however, stated that it would only be final if Mr. Vasquez Gonzalez did not file an appeal.  JA at 77.  Mr. Vasquez Gonzalez did, however, timely file a motion for reconsideration of the December 2010 withdrawal of TPS (JA at 79), meaning that the Mr. Vasquez Gonzalez still possessed TPS status after the December 2010 motion was filed.  Additionally, the September 6, 2011 decision denying TPS also stated that it would not be final if Mr. Vasquez Gonzalez filed a notice of appeal (JA at 81), which Mr. Vasquez Gonzalez did on September 12, 2011.  JA at 83-84.  When Mr. Vasquez Gonzalez filed his I-485 application in April 2012, therefore, Mr. Vasquez Gonzalez still possessed TPS, as the final TPS decision was not issued until June 21, 2013.  JA at 95.   As such, Mr. Vasquez Gonzalez still retained TPS and an independent basis for applying for adjustment of status.  *See Flores v. United States Citizenship & Immigration Servs.*, 718 F.3d 548, 556 (6th Cir. 2013) (holding that USCIS possessed jurisdiction to adjudicate adjustment application alien who initially entered without inspection but subsequently obtained TPS)

("We are disturbed by the Government's incessant and injudicious opposition in cases like this, where the only purpose seems to be a general policy of opposition for the sake of opposition"); *Ramirez v. Dougherty*,  --- F. Supp.2d ---, 2014 WL 2439819, at *3 (W.D. Wash. May 30, 2014).

The District Court, therefore, made two legal errors in its discussion of TPS. First, it assumed that whether Mr. Vasquez Gonzalez had TPS affected his status as an arriving alien, when it does not.  Second, the district court assumed that Mr. Vasquez Gonzalez did not have TPS when he filed the I-485 application, despite the fact that Mr. Vasquez Gonzalez was still in TPS during his appeals.  This Court, therefore, must reverse the District Court.

## CONCLUSION

Based on the reasons presented herein, Mr. Vasquez Gonzalez respectfully asks this Court to reverse the February 12, 2014 judgment of the District Court and remand the case to the district court with instructions for the district court to order USCIS to adjudicate Mr. Vasquez Gonzalez's I-485 Application.

## REQUEST FOR ORAL ARGUMENT

Counsel for the appellant respectfully requests oral argument in this case, because it presents an important issue of statutory and regulatory interpretation of first impression for the Fourth Circuit.

Respectfully submitted,

Dated July 7, 2014

/s/ Christopher A. Bowen
Christopher A. Bowen
Nancy Noonan
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20036
(202) 857-6000 (phone)
(202) 857-6395 (fax)

*Counsel for Appellant*
*Fidel Angel Vasquez Gonzalez*

Erica Rodriguez
Hogar Immigrant Services
Catholic Charities of the
Diocese of Arlington
6201 Leesburg Pike, Suite 307
Falls Church, VA. 22044
(703) 534-9805 (phone)
(703) 534-9809 (fax)

*Of Counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  It contains 6,652 words, excluding parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6).  It has been prepared in a 14-point proportionally-spaced typeface using Microsoft Word.

Dated July 7, 2014                                    /s/ Christopher A. Bowen
                                                              Christopher A. Bowen
                                                              Nancy Noonan
                                                              Arent Fox LLP
                                                              1717 K Street, N.W.
                                                              Washington, D.C. 20036
                                                              (202) 857-6000 (phone)
                                                              (202) 857-6395 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on July 7, 2014.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.


Dated July 7, 2014

/s/ Christopher A. Bowen
Christopher A. Bowen
Nancy Noonan
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20036
(202) 857-6000 (phone)
(202) 857-6395 (fax)